# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

WILLIAM M. DEFEO,

        Plaintiff,

-vs-                                Case No.   2:11-cv-66-FtM-29SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on Plaintiff, William DeFeo's Complaint, seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's claim for disability insurance (Doc. # 1) filed on February 16, 2011. The Plaintiff filed his Memorandum in Support of the Complaint (Doc. # 15) on July 27, 2011. The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. # 21) on October 13, 2011. Subsequently, the Plaintiff filed his Response to Defendant's Memorandum of Law in Support of the Commissioner's Decision (Doc. # 26) on October 31, 2011. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405 (g).

# **FACTS**

## *Procedural History*

The Plaintiff filed a Title II application on February 12, 2007, for Supplemental Security Income (Tr. 87-94), which the Social Security Administration (SSA) denied initially on July 10, 2007, and on reconsideration on December 21, 2007. (Tr. 51-56). On February 4, 2008, Plaintiff filed a written request for hearing. (Tr. 8). On July 24, 2009, the ALJ held a video hearing, and on September 2, 2009, the ALJ found that Plaintiff was not disabled. (Tr. 5-18). On January 4, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff challenges the ALJ's finding that he could perform light work and was therefore not disabled, and appeals the decision denying benefits under 42 U.S.C. § 1383(c)(3).

## *Plaintiff's History*

On the date he filed his application, Plaintiff was 50 years old. (Tr. 87). Plaintiff has past relevant work history as a bartender, restaurant server, and car salesman. (Tr. 109). Plaintiff has a high school education and a military background. (Tr. 24, 128). He alleges an onset of disability from July 7, 2005. (Tr. 85). Plaintiff alleges disability due to heart failure, wrist pain, cervical spine injuries, exhaustion, and depression.

## *Medical and Psychological History*

The medical records begin with Lee Memorial Health System dated July 5, 2005, at which time Plaintiff was hospitalized for four days. Plaintiff was diagnosed with atrial fibrillation with rapid ventricular rate, new onset. (Tr. 371). He underwent an EKG which was normal. Plaintiff complained of shortness of breath and it was noted he had a history of asthma and a herniated disc. (Tr. 374). Doctors reported Plaintiff had a ten-day history of worsening dyspnea and was found to

have congestive heart failure with rapid atrial fibrillation at admittance. (Tr. 370). A CTA of the chest revealed findings compatible with congestive heart failure and bilateral effusions, the larger on the right. (Tr. 369). Chest x-ray also confirmed congestive heart failure. (Tr. 369).

On August 25, 2005, Plaintiff was hospitalized for five days due to developing nausea, fever, and marked increase in heart rate. (Tr. 353). Thyroid studies at admission revealed hyperthyroid. Plaintiff complained of increasing tremors and shakes, heat intolerance, and loose bowel movements. (Tr. 353). A chest x-ray revealed cardiomegaly with congestive heart failure. (Tr. 350). At discharge, Plaintiff was diagnosed with hyperthyroidism, most likely due to Grave's disease and atrial fibrillation. (Tr. 354).

On October 26, 2005, Plaintiff was admitted for two days due to progressive fatigue, weakness, and tachypalpitations. He described presyncopal episode prior to entry. He also reported shortness of breath at that time. Plaintiff was continuing to take his Coumadin, but had supratherapeutic levels and had run out of his medications. (Tr. 339). The final impression was atrial fibrillation and presyncopal episode, Plaintiff continued on beta-blocker; coagulopathy due to supratherapeutic levels of Coumadin; asthma; hyperthyroidism and gastrointestinal prophylaxis. (Tr. 340). Chest x-ray revealed cardiomegaly with mild congestive heart failure. (Tr. 336).

Plaintiff was again admitted to Lee Memorial Hospital on November 21, 2005, for two days due to palpitations. (Tr. 322). Chest x-ray revealed cardiomegaly and borderline interstitial edema. (Tr. 321). At discharge, Plaintiff was found to have acute palpitations, atrial fibrillation with rapid response, hyperthyroidism, and elevated blood sugars. (Tr. 323).

Plaintiff was hospitalized on December 14, 2005, for six days due to bloody cough with

shortness of breath; he was in respiratory failure. (Tr. 306). Plaintiff was transferred to the intensive care unit because of increasing dyspnea and bad arterial blood gases. (Tr. 306). Plaintiff reported he had difficulty getting his medications due to issues with his insurance. (Tr. 307). Chest x-rays revealed cardiomegaly and bilateral infiltrates, worsened on the right side. (Tr. 305). His condition was noted to be brachycardia and heart failure while hospitalized. His final diagnosis was pulmonary edema possibly related to hyperthyroidism, pneumonia, asthma with bronchospasm, respiratory failure, atrial fibrillation, diabetes mellitus, steroid injected hyperglycemia, history of Grave's disease, and coagulopathy secondary to Coumadin therapy. (Tr. 309).

In May 2006, Plaintiff was seen at Lee Memorial Hospital due to nausea, vomiting, and epigastric pain. He complained of cramping pain with diarrhea and the pain radiated into his back. (Tr. 295). The assessment in the ER was acute upper abdominal pain. (Tr. 296).

On July 11, 2006, Plaintiff was again treated in the ER of Lee Memorial due to concerns of an accidental overdose of medication. Plaintiff noted he had been prescribed Vicodin for his cervical disc disease at the Miami VA Medical Center, and he had taken 15 to 20 tablets over the course of 24 hours. (Tr. 289). Plaintiff receives his medical treatment consistently from the VA Medical Center (VAMC).

In September and October 2005, Plaintiff was seen multiple times for medication management, and psychiatric counseling. (Tr. 207). On November 1, 2005, he was seen for medication management of anticoagulants. (Tr. 206).

In January 2006, Plaintiff was diagnosed with thyrotoxicosis with hyperthyroidism, cervicalgia, atrial fibrillation, and he had a psychiatric interview that led to an impression of

generalized anxiety disorder. (Tr. 204). At a second visit, in January 2006, Plaintiff underwent pulmonary function tests which revealed disease of the lungs. (Tr. 205).

On February 15, 2006, he was diagnosed with hyperthyroidism, atypical chest pain, generalized anxiety disorder, chronic pulmonary disease, and atrial fibrillation. (Tr. 209). Plaintiff also underwent radioactive iodine thyroid ablation. (Tr. 210). A chest x-ray revealed pulmonary congestion, an EKG showed atrial fibrillation with moderately dilated left and right atria, and blood work revealed TSH was less than 0.06 with T4 elevated to 4.36. (Tr. 213). Plaintiff was admitted and transferred to the CCU through February 19, 2006. (Tr. 211). Plaintiff was discharged with propranolol and Cardizem to control his heart rate. (Tr. 212).

On February 24, 2006, Plaintiff was seen following his hospitalization and the impression was atrial fibrillation with RVR, failed cardioversion, on Coumadin; chronic obstructive pulmonary disease; and hyperthyroidism secondary to Grave's disease status post RAI. (Tr. 243).

On March 16, 2006, Claimant had medication management on anticoagulants and was diagnosed with atrial fibrillation and depressive disorder. (Tr. 480). On March 22, 2006, he was treated for atrial fibrillation and medication management for anticoagulants. (Tr. 480). On March 27, 2006, it was noted in his file that he was diagnosed with congestive heart failure and long-term use of anticoagulants. (Tr. 480). On March 30, 2006, Plaintiff was seen by the mental health clinic who diagnosed him with generalized anxiety disorder due to a general medical condition, and Plaintiff continued on Celexa, Xanax, and temazepam. (Tr. 236). On March 31, 2006, during an endocrine follow up, Plaintiff was noted to have anxiety, palpitations, tremors, sweating, with tachycardia. The doctor indicated he was positive for mild blurring of vision, eye tearing, and fatigue. The final impression was Grave's disease. (Tr. 233).

In April 2006, Plaintiff was observed to be anxious, having a mild tremor in his hands, and he was assessed with Grave's disease. (Tr. 226). Plaintiff was advised to remain on Coumadin and his severe anxiety was to be addressed by psychiatry. (Tr. 227). On April 18, 2006, Plaintiff was diagnosed with atrial fibrillation, advised on long term use of anticoagulants, toxic diffuse goiter, chronic airway obstruction, degeneration of the cervical discs, and cervical degenerative disc disease. (Tr. 479).

On April 20, 2006, Plaintiff was seen by psychiatry, who noted he had symptoms of panic attacks and anxiety existed. Plaintiff was constricted in his mood and noted multiple stressors in his life. (Tr. 229). The impression was generalized anxiety disorder. (Tr. 227-28).

On May 16, 2006, Plaintiff had an endocrine follow up for his Grave's disease and post ablative hypothyroidism. Plaintiff was noted to be anxious and positive for fatigue. (Tr. 224). On May 23, 2006, Plaintiff reported to his primary doctor at VAMC that he was seen in the ER the day before due to abdominal pain. (Tr. 223).

On June 5, 2006, Plaintiff was treated for atrial fibrillation, toxic diffuse goiter, Grave's disease, and chronic airway obstruction. (Tr. 477). On June 6, 2006, he was noted to have significant anxiety and insomnia. It was noted that his recent episodes of emesis and diarrhea were likely gastroenteritis and the impression was Grave's disease. (Tr. 220-21).

On July 18, 2006, Plaintiff was diagnosed with generalized anxiety disorder and was continued on Xanax and Celexa. Objectively, Plaintiff was noted to be anxious and restless. (Tr. 214). The same day, Plaintiff underwent an endocrine follow up, noting that he was experiencing increased insomnia, anxiety and heat intolerance, his BMI was 31, and the thyroid was enlarged. (Tr. 216-17). The final assessment at the follow up was Grave's disease. (Tr. 218).

On August 7, 2006, cervical spine x-rays confirmed narrowing of the discs in Plaintiff's cervical spine, with neuroforamen encroached by osteophytes. It was noted as disc disease associated with osteoarthritis. (Tr. 530).

On September 28, 2006, Plaintiff was diagnosed with degeneration of the cervical discs and cervical degenerative disc disease. (Tr. 475). In October 2006, he returned for treatment for toxic diffuse goiter, Grave's disease, and atrial fibrillation. Plaintiff had a thirty pound weight gain in the last month that he believed was due to depression. (Tr. 520). In November 2006, Plaintiff was seen for psychiatric therapy due to anxiety. (Tr. 475).

In January 2007, Plaintiff was treated twice at the VA due to asthma, and a goiter due to Grave's disease. (Tr. 474). He was noted to be exhibiting OCD with compulsive washing with soap and water, in addition to the use of peroxide several times a day with skin lesions. (Tr. 515). In February 2007, lab work confirmed a diagnosis of diabetes mellitus. (Tr. 474). Metformin was prescribed by his doctor. (Tr. 513). On March 19, 2007, Plaintiff sought treatment for his cervical degenerative disc disease. (Tr. 473).

On April 12, 2007, Dr. Deborah O'Laughlin completed a consultative examination at the request of the Social Security Administration (SSA). (Tr. 447-51). She noted that Plaintiff suffered from labored breathing with rolling and labored gait that appeared to be due to his function of breathing. Plaintiff's affect was depressed and had the appearance of someone who was feeling very fatigued and physically overtaxed. (Tr. 449). Her final diagnosis was depressive disorder with anxious features, recurrent, moderate to severe without psychosis. She also diagnosed him with mood disorder secondary to multiple medical problems with depressed and anxious features, anti-social personality disorder and was assigned a GAF score of 48[2]. His prognosis was guarded

---

[2] A GAF between 41 and 50 indicates severe symptoms or any severe impairment in social, occupational, or school

to poor. Dr. O'Laughlin concluded by stating Plaintiff is very depressed, withdrawn, and anxious regarding ever increasing medical diagnoses all of which appear to be increasing in severity. (Tr. 450).

On April 26, 2007, a DDS file reviewing physician, Dr. Carol Deatrick, completed a Mental Capacity Assessment ("MCA") at the request of SSA. (Tr. 452-55). Dr. Deatrick also completed a Psychiatric Review Technique ("PRT") at the request of SSA, checking Plaintiff had moderate limitations in difficulties with maintaining concentration, persistence, and pace, with mild limitations in social interaction and activities of daily living. (Tr. 456-69).

In May 2007, Plaintiff was diagnosed with cellulitis with abscesses from infection due to MRSA (Tr. 473), and continued to receive treatment for his Grave's disease, goiter, and atrial fibrillation. (Tr. 471). Right hand imaging profiles confirmed soft tissue swelling of his third finger and over the dorsum. (Tr. 528). Plaintiff underwent debridement of the third finger due to the swelling and infection. (Tr. 497). On May 29, 2007, Plaintiff was noted to have stable anxiety, MRSA in the right middle finger, and continued treatment for his Grave's disease. (Tr. 560).

On June 16, 2007, Dr. S. Collins, completed a pulmonary functioning test with the Plaintiff at the request of SSA. (Tr. 537-40). On July 10, 2007, a DDS file reviewing NON-physician Karin Murphy completed a Residual Functional Capacity Assessment, ("RFC"), at the request of SSA. (Tr. 541-48). She reported Plaintiff had a diagnosis of DDD (degenerative disc disease) and GERD (gastro esophageal reflux disease). She checked that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday, and unlimited in push/pull. (Tr. 541-48).

---

functioning. Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") 32 (American Psychiatric Ass'n 1994).

On June 17, 2007, Plaintiff was treated for hyperthyroidism. He described feeling weak, having nausea, cramping, and heat intolerance. (Tr. 554). An EKG was conducted on June 25, 2007, which revealed borderline concentric left ventricular hypertrophy, bilateral enlargement, and an ejection fraction of 55%. (Tr. 553). Plaintiff developed an umbilical hernia in August 2007, and experienced a COPD/asthma exacerbation. (Tr. 551). In November 2007, the infection spread to Plaintiff's fourth finger. (Tr. 857).

On December 15, 2007, Dr. Eric Wiener, a file-reviewing physician, completed an MCA and PRT at the request of SSA. The MCA noted moderate limitations in sustaining concentration, persistence and pace. (Tr. 728-31). The PRT failed to indicate what limitations Plaintiff had in concentration, persistence and pace, and checked mild limitations in social interaction and activities of daily living. (Tr. 732-45).

On December 19, 2007, Dr. Violet Stone, a file-reviewing physician, completed an RFC at the request of SSA. She indicated Plaintiff had severe impairments of cervical degenerative disc disease with osteoarthritis, right wrist degenerative joint disease, COPD/asthma, acid reflux, and history of hyperthyroidism with atrial fibrillation. She checked that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8-hour workday, and unlimited in push/pull. She checked Plaintiff had environmental limitations and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 746-53).

In February 2008, the MRSA infection spread to Plaintiff's right lower extremity, and an abscess caused cellulitis, which showed signs of redness and swelling. (Tr. 847). On March 18, 2008, Plaintiff developed cellulitis with furunculosis in the right knee and an upper respiratory

infection with COPD. (Tr. 842). On March 31, 2008, Plaintiff was admitted to the VAMC hospital in contact isolation due to MRSA, and all sites tested positive. (Tr. 840).

On June 2, 2008, it was noted that Plaintiff had inadequately treated his Grave's disease purportedly because of an inability to travel and lack of money. (Tr. 831).

In October 2008, Plaintiff was diagnosed with Grave's disease not optimally controlled, prior atrial fibrillation, type 2 diabetes, and anxiety. In November 2008, Plaintiff's lab work indicated diabetes. Again in December 2008, he underwent a radioiodine thyroid uptake with homogeneous uptake throughout, consistent with Grave's disease. (Tr. 811). Plaintiff received medication management on January 7, 2009. (Tr. 801).

In May 2009, Plaintiff was found to have an infected keratosis, and a shave biopsy was performed. (Tr. 801). On June 15, 2009, he was positive for dyspnea, new or worsening, leg pain with swelling bilaterally, skin erythema and swelling in legs worsening. (Tr. 799). On July 22, 2009, Plaintiff's assessment again was Grave's disease, symptomatic, hypo vs. hyperthyroidism and likely thyroid-related heart disease. (Tr. 755).

Dr. Thomas Mattras, whose treatment of Plaintiff is documented throughout the VAMC medical records, completed a residual functional capacity (RFC) on Plaintiff's behalf. Dr. Mattras indicated Plaintiff could stand/walk for 1 hour at a time in an 8-hour workday and stand/walk 2 hours total in an 8-hour workday. Dr. Mattras indicated in his opinion that Plaintiff could sit for 1 hour at one time in an 8-hour workday, and sit for 2 hours total in an 8-hour workday. He opined Plaintiff could lift occasionally 11-20 pounds and that Plaintiff could use his hands for repetitive simple grasping, but never push/pull repetitively, and never use fine manipulation repetitively. (Tr. 861). Plaintiff could use his feet for repetitive movement in operating foot controls. Plaintiff could

occasionally squat, but never bend, crawl, or climb. Plaintiff is able to reach above shoulder level on the right side only. (Tr. 862).

<em>Administrative Law Judge's Decision</em>

The Administrative Law Judge Scott A. Tews issued his "Notice of Decision – Unfavorable" on September 2, 2009. (Tr. 8-18). The Judge's specific findings were as follows:

1.      The Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2008.

2.      The Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 7, 2005, through his date last insured of December 31, 2008 (20 C.F.R. 404.1571 *et seq*.).

3.      Through the date last insured, the Plaintiff had the following severe impairments: obesity, cardiac arrhythmia with congestive heart failure, cervical degenerative joint disease with radiculopathy, chronic obstructive pulmonary disease, Grave's disease, diabetes mellitus, gastroesophageal reflux disease, depression, anxiety, and anti-social personality disorder. (20 C.F.R. 404.1520(c)).

4.      The Plaintiff has the following non-severe impairments: hernia and polysubstance abuse, which is in remission.

5.      Through the date last insured, the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

6.      After careful consideration of the entire record, the ALJ found that, through the last date insured, the Plaintiff has the residual functional capacity to perform light work as defined in

20 C.F.R. 404.1567(b) except he can only occasionally be exposed to fumes, odors, dusts, or gases; he is limited to simple, routine, competitive, low stress, repetitive tasks on a sustained basis over a normal 8-hour workday in a stable work environment with no more than simple decision-making required; and he can have only occasional close, interpersonal interactions with co-workers and the public.

7. Through the last date insured, the Plaintiff was unable to perform any past relevant work (20 C.F.R. 404.1565).

8. The Plaintiff was born on October 1, 1958, and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R. 404.1563).

9. The Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

11. Through the date last insured, considering the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

12. The Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from July 7, 2005, the alleged onset date, through December 31, 2008, the date last insured (20 C.F.R. 416.1520(g)). (Tr. 8-18).

Plaintiff appealed the decision of the Administrative Law Judge to the Appeals Council, but the Appeals Council declined review by order dated January 4, 2011 (Tr. 1-6). This left the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed his Complaint in this Court pursuant to 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulation.[3] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

---

[3] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe,

making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff sets forth three main issues. First, Plaintiff asserts that the ALJ did not give controlling weight to the opinion of the Plaintiff's treating physician, Dr. Thomas Mattras, and failed to provide good cause for rejecting the opinion. Second, Plaintiff asserts that the ALJ erred in not including all of Plaintiff's restrictions in the hypothetical questions posed to the Vocational Expert. Third, Plaintiff asserts that the ALJ's assessment of Plaintiff's Residual Functional Capacity (RFC) is not supported by substantial evidence. The Commissioner argues the ALJ's decision is supported by substantial evidence in the record and therefore, should be affirmed. The Court will consider each of these issues in turn.

### (1) Whether the ALJ Gave Proper Weight to the Treating Physician

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of the treating physician, Dr. Mattras from the VAMC, and further erred by not providing good cause as to why the opinion was not given controlling weight. (Doc. # 15, p. 14). Under 20 C.F.R. § 416.946(c), the regulations give responsibility to the ALJ in assessing a claimant's RFC, and thus entitles the ALJ to discount portions of the record after considering the record as a whole. Id. at §§ 416.913(b), 416.927, and 416.945.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527(d); Lewis, 125 F.3d at 1439 - 41; Sabo v. Comm'r of Soc. Sec., 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). If a

treating physician's opinion on the nature and severity of a plaintiff's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984).

Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error.

Morrison, 278 F. Supp. 2d at 1334. Where the ALJ fails to state a reasonable basis for rejection of the treating physicians' opinion, the opinion will be accepted as true as a matter of law. Ortega v. Chater, 933 F. Supp. 1071, 1076 (S.D. Fla.1996), *citing* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The regulations recognize that treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997), quoting 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e).

In this case, in assessing the treating physician's opinion, the ALJ determined Dr. Mattras' opinion to be inconsistent with other substantial evidence in the record. In his decision, the ALJ states:

> …the (ALJ) is giving little weight to Dr. Mattras' medical opinion because the opinion is on a form where Dr. Mattras simply checked off certain limitations with no narrative explanation for the basis of the limitations indicated and the opinion is inconsistent with other substantial evidence such as the alleviation of the claimant's

> symptoms with compliant treatment and medications…
> Additionally, the (ALJ) accords some weight to the objective
> medical findings contained in the treating physicians' records…to
> the extent they are consistent with the substantial evidence of record
> and the findings made herein. (Tr. 15-16).

The ALJ also concluded:

> [a]fter careful consideration of the evidence, the (ALJ) finds that the
> claimant's medically determinable impairments could reasonably
> be expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects
> of these symptoms are not credible to the extent they are
> inconsistent with the above (RFC) assessment. (Tr. 13).

Here the ALJ stated a reasonable basis for rejection of Dr. Mattras' opinion. In this case, the ALJ makes his RFC determination based upon all relevant evidence of a claimant's remaining ability to do work despite his impairments. Randolph v. Astrue, 2008 WL 4148518 *2 (11th Cir. Sept. 10, 2008) (citing Lewis, 125 F.3d at 1440). Thus, it is not error for an ALJ to consider the record as a whole and subsequently rely on only the relevant pieces of the record in making an RFC determination.

As stated above, under 20 C.F.R. § 404.1527(d)(2), a treating physician's opinion will be accorded controlling weight only if it is well supported by medically acceptable techniques and is not inconsistent with the other substantial evidence in the case. In this case, good cause is shown to properly discount Dr. Mattras' opinion, because he failed to provide any explanations for those opinions when filling out the forms. (Tr. 16).

Furthermore, the ALJ considered Dr. Mattras' documentation of Plaintiff's consistent non-compliance with treatment programs and failure to abide by his medication regiment, in determining the extent to which Dr. Mattras' medical opinion would be regarded. (Tr. 14-16, 213, 395-6, 776, 783, 786, 831). In his opinion, the ALJ states:

[t]he claimant testified, and the record shows, most of the claimant's impairments are caused by his Grave's disease or hyperthyroidism (Ex. 15F/1, 15F/28, 1F/55). Yet, the claimant's medical records are replete with notes that the claimant missed appointments and was not compliant with his treatment (Ex. 3F/12, 3F/17-20, 3F/27). Notably, the claimant was discharged from the Anticoagulation Clinic and his prescriptions discontinued due to his non-compliance with Wafrin therapy…Dr. Mattras noted in July 2009 that claimant had not kept his follow-up appointments…and never followed-up with Endocrinology post I-131 radioactive thyroid treatment…Dr. Luis Tamara wrote a nuclear medicine note…that [he was unsuccessful in contacting claimant]…Dr. Tourtelot…indicated in November 2008 that the claimant had run out of his Prophythiouracil (PTU) medication…1 year prior to a visit and had not been on any (Ex. 15F/24)…Dr. Mattras reported in March 2008 that claimant had not kept his follow-up appointments…missed [an endocrinology appointment]…missed his last 2 appointments [with Dr. Mattras]…A note on November 26, 2007 stated claimant cancelled his follow-up appointment (Ex. 15F/102)…[and] in September 2007…the records indicate that claimant had not been seen in some time and had cancelled and rescheduled multiple appointments (Ex. 11F/20, 11F/26, 10F/6). (Tr. 14-15).

This evidence, in addition to all other materials presented before the ALJ, was significant in finding the Plaintiff not disabled. The ALJ noted that "[t]he claimant's failure to attend doctors' visits and be compliant with his treatment has caused his conditions to be unregulated." (Tr. 15). If a claimant does not follow the prescribed treatment without a good reason, he will not be found disabled. 20 C.F.R. § 404.1530. The ALJ considered Plaintiff's noncompliance with the other evidence in deciding his claims, as permitted by the regulations and the Eleventh Circuit case law. See 20 C.F.R. § 416.929(c)(3)(iv), (v); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

Thus, it is clear from the ALJ's decision that he thoroughly considered the Plaintiff's entire medical history and the opinions of all the doctors, relying only on the relevant pieces of the record in making an RFC determination based upon substantial evidence. Therefore, the ALJ's findings will not be disturbed.

*(2) Whether the ALJ Erred in Not Including all Plaintiff's Impairments*
*in the Hypothetical Questions Posed to the Vocational Expert*

Plaintiff argues the ALJ erred in not including Plaintiff's restrictions, including Plaintiff's moderate limitations in concentration, persistence, and pace, in the hypothetical questions posed to the Vocational Expert (VE). (Doc. # 15, p. 16). Plaintiff further argues that the ALJ failed to address these moderate limitations in his RFC decision. (Doc. #15, p. 17). However, the Commissioner argues that the ALJ both (1) indicated that the medical evidence suggested Plaintiff was able to perform simple work despite his moderate limitation in concentration, persistence, and pace, and (2) implicitly accounted for that limitation in the hypothetical question to the VE by limiting Plaintiff to simple, routine, low stress, repetitive tasks in a stable environment with only occasional close, interpersonal interactions with co-workers and the public. (Doc. # 21, p. 9).

When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the Plaintiff will be able to secure employment in the national economy. Humphries v. Barnhart, 183 Fed. Appx. 887, 891 (11th Cir. 2006) (citing Phillips v. Barnhart, 357 F. 3d 1232, 1239 (11th Cir. 2004)). That hypothetical question must include all of the Plaintiff's impairments. Humphries, 183 Fed. Appx. at 891 (citing Wilson v Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).

Hypothetical questions asked by the ALJ to the VE must describe, comprehensively, the Plaintiff's impairments. Loveless vs. Massanari, 136 F.Supp.2d 1245, 1250 (M.D. Ala. 2001) (citing Pendley v. Heckler, 767 F.2d 1561, 1652 (11th Cir. 1985) (per curiam)). If the hypothetical question upon which the VE bases his evaluation does not assume all of a Plaintiff's impairments, the decision of the ALJ denying a Plaintiff's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. Loveless,

136 F. Supp. 2d at 1250. Notwithstanding, the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments. Id.

In this case, the ALJ found that the Plaintiff was moderately limited in maintaining concentration, persistence, or pace as part of the psychiatric review technique (PRT) that he was required to perform in light of Plaintiff's mental impairments. (Tr. 12). In his decision, the ALJ states:

> [t]he claimant has no restriction in activities of daily living…he takes care of his dog and can prepare frozen dinners (Ex. 7E/3)…he can perform light house work (Ex. 7E/3)…[and] is able to go shopping as his physical impairments allow (Ex. 7E/4). [He has] mild difficulties [in social functioning]…and receives help from his father….The claimant stated that he can pay attention for as long as he needs and he can follow written instructions (Ex. 7E/6). (Tr. 12).

The ALJ also noted that the Plaintiff "did not have an impairment or combination of impairments that met or medically equalled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)." (Tr. 11). Also, the decision states that no expert designated by the Commissioner has offered an opinion that the Plaintiff's impairment equals any section of the listed impairments. (Tr. 12). The ALJ also addresses the moderate limitations in his RFC determination when he states:

> [Plaintiff's] mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08…To satisfy [the criteria], the mental impairments must result in "marked limitations"…[which] means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means 3 episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. (Tr. 12).

Further, the Plaintiff in this case, stated that he can pay attention for as long as he needs and he can follow written instructions (Ex. 7E/6). Plaintiff only suffers from brief lapses of focus (Ex. 12F/3),

and he has experienced no episodes of decompensation, which have been of extended duration, according to the evidence of record. (Tr. 12). Thus, the ALJ sufficiently addressed the moderate limitations in his RFC findings.

In questioning the VE, Joyce Ryan, the ALJ's hypothetical question included all relevant functional limitations. In a series of hypotheticals, the ALJ asked the VE to assume a person of the same age, education, and past work experience. (Tr. 43). The ALJ further requested of the VE:

> assume that such an individual can work at a light exertional level as described in the <u>Dictionary of Occupational Titles</u>…including [limitations such as activities which are] simple, routine, competitive, low stress repetitive tasks on a sustained basis over a normal eight hour work day in a stable environment with no more than simple decision making required and only occasional close interpersonal interactions with coworkers or the public." (Tr. 43).

It is clear from this hypothetical question that the ALJ's questioning included and adequately described all of the Plaintiff's relevant physical impairments, and properly omitted any non-severe impairments.

The ALJ continued his hypothetical questioning by asking whether an individual 'such as this' could be able to perform any other work in the regional or national economy. (Tr. 44). Specifically, he asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and RFC. (Tr. 17). In regards to the VE testimony, the ALJ stated:

> The VE testified that given these factors the occupations such an individual could perform include: assembler of small products, DOT #739.687-030, light unskilled (SVP 2)…assembler of plastic hospital products, DOT #712.687-010, light, unskilled (SVP 2)…and electronics worker, DOT #726.687-010, light, unskilled (SVP 2)…Based on the testimony of the VE the (ALJ) concludes that, through the date last insured…the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not

disabled" is therefore appropriate under the framework of Medical-Vocational Rule 202.21. (Tr. 17-18).

Additionally, the record indicates that there is medical evidence the Plaintiff can perform certain types of work despite the limitation in maintaining concentration, persistence, or pace. (Tr. 44).

In his decision, the ALJ concluded that Plaintiff can perform simple work despite his moderate limitations, according to the VE's testimony. (Tr. 12, 44). Also, the Plaintiff's alleged disabling decrease in concentration was not supported by competent medical sources, but by Plaintiff's claims and indications by his father who reported that Plaintiff can pay attention for as long as he needs and can follow written and spoken instructions (Ex. 7E/6). (Tr. 12, 15). Thus, the VE's testimony that Plaintiff could perform work in the national economy that was simple, routine, low stress, and repetitive, adequately supports the ALJ's assessment of a moderate functional limitation on concentration, persistence, and pace.

Therefore, the undersigned recommends that the ALJ's decision is supported by substantial evidence and decided under the proper legal standards. The ALJ fully and adequately considered the severity or the effects of all the Plaintiff's impairing conditions, medical evidence of record, and testimony of the VE in making his determination. The hypothetical posed by the ALJ properly omitted non-severe impairments.

### (3) *Whether the ALJ's Determination of DeFeo's RFC is Supported by Substantial Evidence*

Plaintiff's last argument is that substantial evidence proves the ALJ failed to properly assess his residual functional capacity (RFC). Plaintiff argues that the ALJ gave no great, considerable, or substantial weight to any doctor from the evidence of record, which constitutes

legal error. (Doc. # 15, p.18, 25). Further, Plaintiff states that the evidence of record clearly supports multiple nonexertional limitations. The Commissioner argues that under the five step evaluation process the ALJ correctly found that Plaintiff has not engaged in substantial gainful activity, has "severe" impairments, does not meet or equal the criteria of any listing, and is unable to engage in past relevant work, however can engage in other work as defined by 20 C.F.R. § 404.1520. Concluding that the Plaintiff is not disabled as defined in the Social Security Act, and the decision is supported by substantial evidence, decided under the proper legal standards. (Doc. # 21, p.1-3).

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's RFC and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the plaintiff's age, education, and work experience, the RFC is considered in determining whether the plaintiff can work. Lewis, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a plaintiff's remaining ability to do work despite her impairments. Phillips, 357 F.3d at 1238; Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). That is, the ALJ must determine if the plaintiff is limited to a particular work level, using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1567).

In this case, based upon the medical evidence and the testimony provided at the hearing, the ALJ determined that the Plaintiff was capable of performing light work. In his decision, the ALJ states:

> After careful consideration of the entire record, the ALJ found that,
> through the last date insured, the claimant has the residual
> functional capacity to perform light work as defined in 20 C.F.R. §

404.1567(b) except he can only occasionally be exposed to fumes, odors, dusts, or gases; he is limited to simple, routine, competitive, low stress, repetitive tasks on a sustained basis over a normal 8-hour workday in a stable work environment with no more than simple decision-making required; and he can have only occasional close, interpersonal interactions with co-workers and the public. (Tr. 12).

The ALJ continued:

[i]n making this finding, the (ALJ) has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medial evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. The (ALJ) has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 13).

The ALJ reviewed the medical evidence, including the opinions of the Plaintiff's treating physician, Dr. Mattras, and other doctors of record including Dr. Tamara, Dr. Tourtelot, Dr. O'Laughlin, Dr. Rabinowitz, Dr. Weiner, and Dr. Deatrick when determining Plaintiff's RFC. (Tr. 14-16).

Based upon the ALJ's review of the medical evidence, the ALJ supported her RFC determination with sufficient evidence from the record, including: (1) Dr. Mattras' reports that Plaintiff has refused to participate in a weight loss program, missed multiple appointments and was non-compliant with his treatment (Tr. 14); (2) Dr. Tamara's nuclear medicine note that he had been unsuccessful in contacting the Plaintiff between December 2008 and March 2009 for appointments (Tr. 14); (3) Dr. Tourtelot's notes that indicated the Plaintiff had run out of his PTU medication one year prior to the visit and had not been on any medication; (4) the lack of evidence of record to reflect that Plaintiff has received any physical therapy or other treatments for his degenerative joint disease, or show that Plaintiff visited the doctor's office specifically complaining of pain from his cervical disease; (6) Dr. O'Laughlin's assessment of the Plaintiff as

fully aware and competent, able to perform tasks reasonably well and his attention to direction as good (Tr. 15); and (7) the medical evidence of record which indicated the Plaintiff received limited medical treatment causing his conditions to be unregulated. (Tr. 15). Accordingly, Plaintiff failed to prove any limitation in excess of the ALJ's RFC assessment, which is supported by substantial evidence. See Moore, 405 F.3d 1208, 1213 (11th Cir. 2005) (even if the record could support an alternative RFC, when based on substantial evidence, the ALJ's finding will not be disturbed).

Further, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. (20 C.F.R. § 404.1527 (e)). The ALJ is *not* required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner (20 C.F.R. § 404.1527 (e)).

In assessing all the evidence of record, the ALJ determined some opinions to be unsupported by the record, but granted other parts of the assessment some weight. In his decision, the ALJ states:

> After careful consideration of the evidence, the (ALJ) finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's substituted party's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above (RFC) assessment. (Tr. 13).

Regarding the consulting physicians' reports, the ALJ stated:

> Deborah O'Laughlin, Ph.D., noted in her consultative examination that the claimant's intellect and level of responses suggested an average to above average fund of general information (Ex. 4F/3). [She also] noted that the claimant's mood was stable and his affect

was depressed…[his] thought processes suggested no psychosis or perceptual anomalies (Ex. 4F/3…To the extent Dr. O'Laughlin's opinion is consistent with the medical records as a whole, the (ALJ) is giving some weight to her medical opinion regarding the claimant's impairments and limitations. (Tr. 15-16).

The ALJ also gave "Dr. Mattras' medical opinion little weight because the opinion is on a form where [he] simply checked off certain limitations with no narrative explanation for the basis of the limitations indicated and the opinion is inconsistent with other substantial evidence such as the alleviation of the claimant's symptoms with compliant treatment and medications." (Tr. 16).

The ALJ considered Dr. Rabinowitz's consultative examination report in making his RFC determination, but ultimately granted this physician some weight, "to the extent it is consistent with the substantial evidence of record and the findings made herein." (Tr.16). Lastly, after reviewing both of the State Agency Psychologists' opinions, they indicated that the "claimant was capable of performing the exertional demands of medium work…however the weight lifting required for medium exertional activities is precluded by his impairments." (Tr. 16).

The ALJ also refers to Dr. Weiner and Dr. Deatrick's reports in his decision, and states:

> …[they] provided specific reasons for their opinions (Ex. 5F, 12F) regarding the claimant's mental RFC showing their opinions were predicated on the evidence of record, including careful consideration of the claimant's treating doctors' opinions and the claimant's allegations about his symptoms and limitations. The (ALJ) finds that evidence received into the record after the reconsideration determination did not provide any new or material information that would significantly alter their assessments (Social Security Ruling 96-6p). (Tr. 16).

In this case, the ALJ makes her RFC determination based upon all the relevant evidence of the Plaintiff's remaining ability to do work despite her impairments. Randolph v. Astrue, 2008 WL 4148518 *2 (11th Cir. Sept. 10, 2008) (citing Lewis, 125 F.3d at 1440). The ALJ granted some

weight to medical opinions and other evidence which was consistent with the medical evidence of record.

Thus, it is not error for the ALJ to consider the record as a whole and subsequently rely on only the relevant pieces of the record in making her RFC determination. See Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004). Clearly, the ALJ considered the Plaintiff's entire medical history and the opinions of all the doctors in order to make her RFC determination, which was based upon substantial evidence. Therefore, when the finding of an ALJ is supported by substantial evidence, it is in the province of the District Court to affirm her decision, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips, 357 F.3d at 1240.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this   5th   day of January, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record